AMANDA LAVALLEE *v.* LACONIA NATIONAL BANK.

78

*Morse & Grant* (*Mr. Grant* orally), for the plaintiff.

*Wayne M. Plummer, Jewett & Jewett* and *Normandin & Normandin* (*Mr. Theo S. Jewett* orally), for the defendant.

BRANCH, J. It was conceded that the defendant, on or about February 20, 1941, withdrew the sum of $9,562.36 from the plaintiff's savings account in the City Savings Bank by means of an order purporting to be signed by her, and applied the same in payment of two notes for $5,500 and $4,000 alleged to have been signed by the plaintiff. The notes were not in evidence and the plaintiff denied that she ever signed any notes to the defendant bank. She also denied signing the order against her savings bank book which was in evidence, and introduced evidence that the signature upon it was forged.

The defendant's evidence tended to show that Mrs. Lavallee at her home on May 9 and May 29, 1940, signed notes for $5,500 and $4,000 respectively, to secure which she "put up" her savings bank book in the City Savings Bank by signing, in the presence of defendant's cashier, two orders against said savings account, the first for $5,500 and the second for the full amount due upon the account, which was designed to cover the amount of both notes. At the time of the first transaction the defendant simply placed the proceeds of the $5,500 loan to the account of the plaintiff's husband, Leander Lavallee. When the second loan was made, the defendant bank issued a check to the order of the plaintiff in the sum of $3,980. This check was given to Leander Lavallee at the bank and he later returned it with an endorsement purporting to be that of the plaintiff.

Defendant's exception to the allowance of the amendment to plaintiff's writ will be first considered. It is plain that the plaintiff's claim of conversion had two possible legal bases, one, that the defendant appropriated her bank account and sought to charge her as surety for her husband in violation of law, and two, that her signatures upon the check and order in evidence were forgeries. The Court's order allowing her amendment to the original declaration merely allowed her to state both of these grounds. Whether justice required this amendment, and whether the trial should proceed upon

both counts, were questions of fact for the Trial Court. *Morgan* v. *Joyce*, 66 N. H. 476; *Genest* v. *Company*, 75 N. H. 365. If the defendant's rights could have been prejudiced in any way by the order that both counts be tried together, this result was obviated by the subsequent order of the Court withdrawing the first count from the consideration of the jury. No way in which the defendant could have been harmed by the procedure followed has been suggested to us by counsel or by a reading of the record. This exception is accordingly overruled.

We have difficulty in following the argument of the defendant that its motion for a nonsuit should have been granted. It is thus stated in defendant's brief: "The evidence fails to establish a relationship between the plaintiff and the defendant; therefore there is no duty incumbent upon the defendant, contractual or otherwise. . . . The plaintiff, herself, denies having any connection or business transaction with the defendant. Any connection, accidental or otherwise, between the plaintiff and the defendant did not create any duty between them. Therefore the plaintiff did not have any legal complaint against the defendant. . . . "

If the defendant possessed itself of the plaintiff's money and applied the same to its own uses, all the requisites of a conversion would seem to be present (See 53 Am. Jur. 811, *Tit.* Trover and Conversion *s.* 8), and the only question remaining to be decided would seem to be the legality of the means by which the change in possession was accomplished. This was the question submitted to the jury, and the motion for a nonsuit upon the ground stated was properly denied.

In this connection should be considered two other claims of the defendant which are argued in its brief under the heading, "Verdict against the weight of evidence; The plaintiff is estopped by her conduct." We there read: "Even though this is a case at law we believe that equity rules should apply" and accordingly it is argued, 1, that "the plaintiff should be barred by her laches and conduct from sustaining her suit," and 2, that she is "equitably estopped" from making her present claim of forgery.

It is a sufficient answer to the first of these contentions to point out that the present suit was brought well within the period of the Statute of Limitations, and the desire of the defendant that "equitable rules should be applied" to establish a shorter period of limitation cannot be gratified.

The defendant's claim of equitable estoppel is based upon the testimony of the plaintiff that she did at one time give her husband

her bank book to be used as collateral to secure a note for $1,000, and it is said, "she set her book in motion to do wrong and mislead anyone who came in contact with it. If her husband misinformed her, that was not the fault of the bank." If the plaintiff intrusted her bank book to her husband for a limited purpose (which would be in accordance with their previous conduct as disclosed by the evidence), and he misused it to accomplish an entirely different result, this would not constitute a sufficient ground for denying the plaintiff's claim in the present case. The defendant claimed to have acted, not upon the strength of Mr. Lavallee's possession of his wife's bank book, but upon her signature to various documents in the presence of its cashier. Whether she in fact signed these documents was the question tried. The possession of the bank book by her husband was a minor factor in the situation and cannot, especially after verdict, be regarded as decisive of the plaintiff's case.

· Defendant's contention that the "jury was misled and fell into a plain mistake" is based on the fact that the suit involved two loans, one for $5,500 and the other for $4,000. The note and order evidencing the first loan were not in evidence, and it is argued by the defendant that the evidence of its cashier as to their execution by the plaintiff, not being specifically contradicted by her, must be accepted as true, and consequently that the inclusion of the $5,500 loan in the verdict was a plain mistake. As stated in defendant's brief, however, "Mrs. Lavallee denies that she ever borrowed any money from the Laconia National Bank, and states that she never signed a note, and that Mr. Saltmarsh, the cashier, never came with her husband, Captain Lavallee, to her house, and that she did not sign any instrument whatsoever." In this state of the proof it cannot be said as a matter of law that the jury fell into a plain mistake, or any mistake, in computing the amount of the verdict.

*Judgment on the verdict.*

All concurred.